**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-20261-CR-ALTONAGA**

**UNITED STATES OF AMERICA**

  **v.**

**CUTTER MURRAY**

           **Defendant.**

_____/

## <u>SENTENCING MEMORANDUM</u>

The government submits this sentencing memorandum for defendant Cutter Murray ("Defendant Murray"), who is scheduled to be sentenced on December 12, 2025. Defendant Murray pleaded guilty to a one count information charging him with money laundering in connection with a multi-year Jamaican Lottery Fraud ("JOLT") scheme that victimized millions of elderly American consumers. One additional defendant, Murray's father, Troy Murray, is set to plead guilty before Judge Gayles on January 7, 2026. For the reasons discussed below, the government recommends that the Court sentence Murray to 41 months of incarceration, which is the low end of the applicable Guidelines range. The government submits that such a sentence would be a just result that is sufficient, but not greater than necessary, and appropriately accounts for the factors set forth in 18 U.S.C. § 3553(a).

## FACTUAL BACKGROUND

Defendant Murray admitted to these facts in support of his guilty plea:

Beginning by at least 2015, Defendant Murray became aware that his father, Troy Murray, organized and maintained lists of data to sell to Jamaican scammers, among others, who perpetrated lottery fraud schemes targeting elderly American consumers. These lists contained the names, phone numbers, and physical addresses, as well as in some cases, ages,

and email addresses, of the consumers. Troy Murray sold these lists of American consumers to Jamaican scammers knowing that the scammers would call the consumers as part of a fraud scheme. The sale of these data lists made Troy Murray a prolific and well-known lead list broker for Jamaican scammers and earned Troy Murray hundreds of thousands of dollars annually in ill-gotten gains.

Defendant Murray knew that after receiving payment, Troy Murray used the funds to purchase property, farm equipment, vehicles, collectibles such as bars and coins made of precious metals, and high-end, collectible Lego sets. Troy Murray also sent fraudulent proceeds derived from the fraud scheme to Defendant Murray. The fraudulent proceeds were received in the form of Green Dot cards, PayPal transactions, and Western Union wire transactions. From the fraudulent proceeds, Defendant Murray would keep 20% of what was received and deposit, prior to 2018, the balance into bank accounts at Troy Murray's direction.

In or around 2015, Postal Inspectors with the United States Postal Inspection Service interviewed Defendant Murray and confronted him about the nature of the funds he received from Troy Murray. The Postal Inspectors informed him of the criminal nature of Troy Murray's operation and warned him to cease participating in criminal activity. Following his interview, Defendant Murray advised his father that he knew the source of the funds he was receiving and told Troy Murray that he no longer wanted to receive illicit funds.

In or around April 2018, after experiencing financial trouble, Defendant Murray again began accepting criminal proceeds from Troy Murray. From April 2018 through November 2023, Defendant Murray received proceeds totaling over $1.6 million. For example, on June 7, 2021, Defendant Murray deposited into a Dakota Prairie Bank account in the name of Chantier Creek Resort LLC that he controlled a cashier's check drawn from Troy Murray's Wells Fargo bank

account in the amount of $200,000 that represented proceeds from Troy Murray's criminal activity.

Using the criminal proceeds he received between April 2018 through November 2023, Defendant Murray made several purchases over $10,000 and spent much of the money on tools, collectible coins, and other goods.

## GUIDELINES CALCULATION

In the plea agreement, the parties agreed that Defendant Murray's Sentencing Guidelines range should be calculated, after acceptance of responsibility, at Offense Level of 22. Plea Agreement, Dkt. No. 11 ¶¶ 6, 9. If the Court adopts the agreed-upon Guidelines as set out in the Plea Agreement, given Murray's Criminal History is within Category I, his advisory guidelines range should be calculated at 41-51 months of incarceration.

The Probation Office provides a different analysis and includes an enhancement for vulnerable victims with a total offense level, after acceptance of responsibility, at Offense Level 24. Draft Presentence Investigation Report, Dkt. No. 16, ¶¶ 35-44. The United States and Defendant Murray did not agree to a two-level upward enhancement for vulnerable victims in the Plea Agreement, *see* Plea Agreement, Dkt. No. 11, and both parties objected to the Probation Office including it in the final PSR. Although Defendant Murray admitted that his father's lists contained information of elderly Americans, *see Id.*, Defendant Murray's conduct is far afield from the victims in this matter and that makes his situation distinguishable from other defendants that may typically receive such an enhancement. Defendant Murray did not participate in the creation or maintenance of his father's lists and did not participate in frauds perpetrated against elderly Americans by the scammers that purchased lists from his father. Defendant Murray was charged with and pled guilty to the conduct which he participated in – laundering money that his father received in his illicit list broker business. As Defendant Murray's contact with elderly American

in this matter is based solely on the limited knowledge that his father's lists contained the names of said elderly Americans, Defendant Murray should not receive an enhancement for vulnerable victims.

## SENTENCING FACTORS

When determining the appropriate sentence, the District Court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *See United States v. Gall*, 552 U.S. 3849 (2007). Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary to comply with the purposes of the statute which include the need for the sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training. In addition, the statute requires the court to consider a number of factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available; (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

### A.      Nature and Circumstances of the Offense

Defendant Murray laundered funds for his father's illicit list-broker business. Between April 2018 and November 2023 Defendant Murray knowingly received over $1.6 million in fraudulent funds collected by Troy Murray during the course of his criminal conduct. Defendant Murray then spent those funds to enhance his lifestyle.

The evidence of Defendant Murray's involvement involves voluminous bank and financial transaction records that prove Defendant Murray's conduct. Defendant Murray knew of the criminal nature of his father's lead list business due to a 2015 encounter with law enforcement

4

where Defendant Murray was warned about his father's illicit dealings. Because of that interaction, Defendant Murray refused to receive funds from his father until the time frame of the course of conduct related to the current offense to which Defendant Murray pled guilty.

**B.      History and Characteristics of the Defendant**

A guidelines sentence is also appropriate in light of the history and characteristics of the defendant. As noted above, Defendant Murray was warned in 2015 by law enforcement that his father's business was related to fraud. Although Defendant Murray understood that warning, he proceeded to re-involve himself in his father's dealings by laundering money between April 2018 and November 2023. United States Postal Inspectors conducted a warrant-based search at Defendant Murray's home in November 2023. At the time of the search, Defendant Murray cooperated with the agents and provided a written confession related to laundering funds for his father.

Though Defendant Murray deserves credit for his timely acceptance of responsibility by promptly pleading guilty, he knowingly laundered funds for his father for several years after being warned by law enforcement of the criminal nature of his father's business. A guidelines sentence will specifically deter this defendant from re-engaging in such criminal conduct after his release.

**CONCLUSION**

For the reasons stated above, the government recommends a sentence at the low end of the applicable guidelines range: 41 months of imprisonment. A sentence of 41 months is just and sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Such a sentence would appropriately reflect the seriousness of the offense, provide deterrence to others who would seek to help launder funds obtained through criminal conduct by those who seek to prey upon American citizens from locations abroad, protect vulnerable members of society, and promote respect for the law.

Dated: December 5, 2025    Respectfully submitted,

          JASON A. REDING QUIÑONES
          UNITED STATES ATTORNEY

          _____

          David Sullivan
          Senior Litigation Counsel
          Enforcement and Affirmative Litigation Branch
          U.S. Department of Justice
          Court ID No. A5501955
          450 Fifth Street, NW
          Washington, D.C.  20001
          Tel. 202-880-0257
          Email: David.Sullivan2@usdoj.gov
          Ryan Norman
          Trial Attorney
          U.S. Department of Justice
          Criminal Division, Fraud Section
          Court ID No. A5502913

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on December 5, 2025, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic

filing to all counsel of record.

/s/ David Sullivan
DAVID SULLIVAN
Senior Litigation Counsel